UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS PHILLIPS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | No.  2:21-cv-01903-EFB (SS)<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability benefits under Title II of the Social Security Act. ECF No. 1. The action is before the undersigned pursuant to the consent of the parties. The parties' cross-motions for summary judgment are pending. ECF Nos. 18, 20. For the reasons provided below, the court grants plaintiff's motion, denies the Commissioner's motion, and remands the case to the Administration for further proceedings.

**I.　　BACKGROUND**

On October 17, 2019, plaintiff filed an application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act) alleging that his disability began as of September 31, 2018.[1]  ECF 13-1, Administrative Record (AR) 22. Plaintiff alleges he is disabled due to hip

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically

1

arthritis, a degenerative lumbar disease, and chronic pain. AR 391-95, 418, 425-27, 613. 718-Plaintiff also suffers decreased blood platelets linked to his non-alcoholic fatty liver disease (NASH cirrhosis), which limits his options for surgery and epidural injections to treat his pain. *Id.* Plaintiff's application for benefits was denied initially and upon reconsideration. On December 21, 2020, an administrative hearing was held following plaintiff's written request. *Id.* at 22, 35-67. After a December 2020 hearing before an administrative law judge (ALJ), at which plaintiff was represented by counsel, the ALJ published an unfavorable decision on January 29, 2021. AR 22-30.

At the hearing, plaintiff testified as to his previous work in phone tech support and as an appliance technician. AR 40-41. Plaintiff testified that in 2012, he was in a motor vehicle crash that precipitated his lower back pain; he continued to work until late 2018 when worsening degenerative back pain prevented him from performing his basic work tasks. AR 45-47. Specifically, in early November 2018, plaintiff went to an urgent care center due to worsening

---

determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 42 U.S.C. §§ 423(d)(1)(A), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The steps are:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

pain, where the attending provider advised activity and lifting restrictions. AR 436. Plaintiff continued to see medical professionals and underwent an MRI that revealed disc degeneration and protrusions believed to possibly "affect both L5 and S1 nerve roots." AR 539. In November 2018 (AR 428), and again in February 2019, plaintiff was instructed to work no more than four hours per day. AR 404. Plaintiff was also referred to a spinal surgeon. *Id.*

Plaintiff consulted with neurosurgeon Dr. David Moeller in February 2019. AR 400-401. Dr. Moeller advised that his low platelet count would complicate any lumbar surgery. *Id.* Dr. Moeller also stated that surgery might not relieve plaintiff's particular type of back pain. AR 400. In 2019 and 2020, plaintiff's back pain continued to worsen, despite physical therapy. AR 338-365, 589-93, 616-19. Numerous radiology exams found that plaintiff suffered from multilevel degenerative disc disease, facet arthritis, stenosis, and herniated discs. AR 463, 539, 539. Plaintiff submitted extensive testimony as to the limitations on his daily activities due to his chronic back pain. AR 239-41, 263, 46-59.

Vocational expert (VE) Thomas G. Linvill also testified at plaintiff's hearing. He testified that plaintiff's prior tech support job was a sedentary occupation. AR 61. When asked whether a hypothetical individual with the functional limitations described by the ALJ in the residual functional capacity (RFC) finding was capable of performing tech support work, VE Linvill stated that the hypothetical individual "certainly could perform work as a user support analyst." AR 63.

The ALJ determined that plaintiff had not been under a disability during the period at issue, finding as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since December 31, 2018, the alleged onset date (20 CFR 404.1571 *et. seq.*).
. . . .

3. The claimant has the following severe impairments; bilateral hip osteoarthritis, liver cirrhosis, and obesity (20 CFR 404.1520(c)).
. . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

>    CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
>    . . . .
>
>    5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift and/or carry ten pounds frequently, twenty pounds occasionally; he can stand and/or walk for four hours out of an eight-hour workday; he can sit for six hours out of an eight hour workday; he will require a sit/stand option at will such that after sitting for one hour he can stand for five minutes; he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; he is never to climb ladders, ropes or scaffolds; he can have frequent exposure to unprotected heights, moving mechanical parts, extreme cold and odors, dust, fumes and pulmonary irritants.
>
>    . . . .
>
>    6. The claimant is capable of performing past relevant work as a service technician and tech support. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
>    . . . .
>
>    7. The claimant has not been under a disability, as defined by the Social Security Act, from December 31, 2018, through the date of this decision (20 CFR 404.1530(f)).

AR 24-30.

## II.    STANDARD OF REVIEW

The court will uphold the Commissioner's decision that a claimant is not disabled if substantial evidence in the record supports the Commissioner's findings of fact, and the Commissioner applied the proper legal standards. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

/////

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### III.    CLAIMS

Plaintiff claims that the ALJ made the following errors: (1) the ALJ erred in discounting plaintiff's subjective testimony as to the severity of his symptoms; (2) the ALJ erred in determining that plaintiff could perform his past relevant work, and thus that plaintiff was not disabled under the Social Security Act at any relevant time.

### IV.    ANALYSIS

A.  <u>Subjective Testimony</u>

Plaintiff argues that the ALJ improperly discounted his subjective statements about disabling pain and other impairments. As summarized by the ALJ, plaintiff alleged:

> [H]e was disabled due to chronic back pain, lumbar radiculopathy, left knee pain, cirrhosis and obesity (Exhibit 3E, p.2). He testified that he is in constant back pain and takes medication, which causes several side effects including diuretics that require him to have more than the usual amount of bathroom breaks. He stated his hips have started hurting and surgery was considered but his platelet count was way too low, and still is. He indicated he has to elevate his legs to lower swelling, sitting is the only relief, but he needs to get up for about five minutes after an hour. He stated he has a nonprescribed walking stick that the doctors actually discouraged him from using for fear he would become dependent on it, but he stated it really helps him.

AR 26. The ALJ found that plaintiff's statements "concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 27.

The ALJ subsequently detailed his reasons as follows:

> Turning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than those reported above. Specifically, the treatment records reveal the claimant received mostly routine, conservative and non-emergency

treatments since the alleged onset date. The undersigned has read and considered all the medical evidence in the record (Exhibits 1F-9F).

He had no joint tenderness, deformity or swelling on April 25, 2019 with no abnormal sensation or reflexes and no focal neurological findings (Exhibit 2F, p. 63), and he underwent nutrition treatment for obesity on May 31, 2019 (id., p. 54). A liver ultrasound on October 7, 2019 revealed diffuse hyperechoic liver, nodular contour, with normal hepatopetal flow in the main portal vein with no suspicious mass (id., p. 9).

Overall, the longitudinal evidence of record confirms the claimant has just not been limited by the symptoms of his conditions to the point of total disability. He was discharged after ten weeks of physical therapy on November 19, 2019 with improved strength but little to not functional progress (id., p. 13). His diagnosis of NASH cirrhosis was overall stable on December 3, 2019 and his extremities had no atrophy with 2+ bilateral lower extremity pitting edema (id., p. 10).

He had trouble walking due to hip pain, which was worse on the left, on February 19, 2020 (Exhibit 4F, p. 1), which supports a limitation of light exertion with only four hours of standing and walking with a sit/stand option at will such that after sitting for one hour he can stand for five minutes. He was negative for falls, focal weakness, loss of consciousness and groin numbness. He appeared uncomfortable standing and walking, but he had no bony spinal tenderness with lower extremity strength of 5/5 throughout. He had pain most significant in the left paraspinal muscles and over the SI joint with no anterior groin pain or lateral hip pain. It was noted that his overall pain was likely worsening with decreased activity (id., pp.4-5). A left hip x-ray shows severe bilateral hip osteoarthritis (id., p. 12) which support no more than occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling, a preclusion to climbing ladder, ropes or scaffold and no more than frequent exposure to unprotected heights, moving mechanical parts, extreme cold and odors, dust, fumes and pulmonary irritants.

The claimant's alleged symptoms are just not reasonably consistent with the medical evidence and other evidence in the record. He had no saddle anesthesia or weakness on February 24, 2020 (id., p. 18). His muscle strength was 5/5 in the bilateral lower extremities, gait was within normal limits, and range of motion was limited due to body habitus with no evidence of spine asymmetry but he was positive for tenderness over the midline and bilateral lower paraspinals (id., p. 19), supporting a light exertion with standing and walking of no more than four hours in an eight-hour workday.

A liver ultrasound on June 5, 2020 had no suspicious liver mass and was US-1 negative (Exhibit 6F, p. 51), his NASH cirrhosis continued to be overall stable (id., p. 54), and he stated his lower back and hip pain had not really improved, but he had low platelets, which limit some treatments for his chronic pain (id., p. 56).

> He had an ongoing diagnosis of anascara likely secondary to cirrhosis on June 15, 2020 (id., p. 47). He consulted with acupuncture on June 23, 2020 and stated he had practiced acupressure every day (id., p. 21). It was discussed on August 25, 2020 that movement and regular physical activity was important (id., p. 20). Furthermore, a right foot x-ray on September 18, 2020 showed no significant abnormality (id., p. 17).
>
> Although the claimant is likely to have some pain and limitations, the records discussed above do not support the extent the claimant has alleged. He has a significant ability to sit, stand, walk, lift and carry, based on the objective physical examination, discussed above, which show he had severe osteoarthritis but only mild spine degeneration that was out of proportion to his pain complaints, and he was repeatedly encouraged to move and engage in physical activity as his pain was likely worsening with decreased activity.
>
> . . . .
>
> The undersigned has considered, but granted, little probative weight to the testimony and statements of the claimant. As discussed above, the paucity of evidence did not support the ultimate allegation of disability. His activities of daily living in conjunction with the medical evidence demonstrating minimal abnormalities, reflected a significant functional capacity and not an individual unable to sustain regular and continuing work due to medically determinable impairments.

AR 27-29.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See*, *e.g.*, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990); *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief"). The Ninth Circuit has clarified that, when discounting subjective testimony, an ALJ must provide "specific, clear, and convincing reasons for doing so." *Wade v. Saul*, 850 F. App'x 568, 569 (9th Cir. 2021), citing *Lambert v. Saul*, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ

may then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third-party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

Here, plaintiff argues that the ALJ erred in multiple ways when evaluating plaintiff's subjective testimony. First, plaintiff maintains that the ALJ improperly disregarded much of plaintiff's testimony as to his pain and limitations. The ALJ did not address plaintiff's written statements from January and June 2020, where plaintiff described constant pain in his back and hips that rendered him unable to complete basic household chores such as vacuuming or dusting. AR 239-241. Plaintiff also stated he could walk only short distances (about an eighth of a mile) at a very slow pace. AR 239. Plaintiff testified he could no longer participate in his hobbies such as tennis, golf, and car maintenance. AR 240-241. By June 2020, plaintiff testified that his pain was such that he could not dress himself or pull himself off of the ground without assistance. AR 263. Plaintiff reiterated these limitations in the phone hearing with the ALJ, and also testified that he spent hours in a recliner daily in order to manage his pain and control his leg edema. AR 46-59.

Plaintiff also maintains that the ALJ failed to consider or in some cases mischaracterized significant portions of the objective medical evidence. For example, the ALJ stated that "a review of the record in this case reveals no restrictions recommended by the treating doctors, who never ordered or even suggested to the claimant that he limit the time that he stood or sat, or the

8

amount he lifted." AR 29. The record, however, confirms that the ALJ's conclusion is incorrect, and that more than one treater recommended restrictions on plaintiff's activity.

For example, on November 1, 2018, Pa-C Vitaliy Kostyukevich examined plaintiff and "recommended avoiding prolonged walking, standing, twisting, or lifting of weight greater than 20lbs until pain decreases." AR 436. Dr. Jeff Rodgers concurred with this recommendation. AR 437. On November 8, 2018, Dr. Bradley T. Haas stated that due to plaintiff's chronic lower back pain, plaintiff was restricted to "no more than 4 hours of work per day and no lifting above 40 lbs." AR 428. In February 2019, Dr. Hass confirmed that plaintiff presented with "severe lumbar back pain radiating down the left leg" and restricted the amount plaintiff could lift to "[n]o lifting above 20lbs", while continuing to restrict plaintiff to a "max 4 hours of work per day." AR 404. Subsequently, plaintiff's condition continued to deteriorate, and Dr. Katherine Martineau found in February 2020 that plaintiff was "significantly limiting activity because of pain and pain has gotten worse." AR 616. She also stated plaintiff appeared "uncomfortable standing and walking." *Id.* at 618. Notably, defendant admits that the ALJ was in error, and that plaintiff "is correct that his doctors did, in places, place functional limitations on him." ECF No. 20 at 11.

In addition, plaintiff maintains that the ALJ wrongly concluded that "[t]here were thus no clinical signs of nerve root compression or any other condition, which could cause the chronic disabling back pain alleged by the claimant, and the medical record, otherwise, documents no such clinical signs." AR 29. The record confirms, however, that a lumbar MRI found that plaintiff had a protruding disc and narrowing at the L5-S1 that "may affect both L5 and S1 nerve roots." AR 539.

Finally, plaintiff argues that the ALJ erred when misstating plaintiff's testimony regarding his activities. The ALJ concluded as follows:

> Despite the alleged impairment, the claimant has engaged in a somewhat normal level of daily activity and interaction. The claimant admitted activities of daily living including that he drives, shops, and runs errands. In an exertional questionnaire he admitted he tries to do common house cleaning and yard maintenance, vacuums, dusts, worked on a shower install that has been an ongoing project, does maintenance on his car, and he uses an electric weed eater on his lawn.

9

27. As discussed *supra*, however, plaintiff testified as to significant limitations on his daily activities, including that he was unable to dress himself or get up and down from the floor unassisted. AR 263. Plaintiff testified that he only slowly walks brief distances while grocery shopping or running errands, and that doing so causes him pain and sometimes requires breaks. AR 239. Plaintiff also stated that his household and outdoor chores were minimal, and required frequent rest and the use of pain medication. AR 239-40, 263.

After a review of the record, the court concludes that the ALJ erred in rejecting plaintiff's testimony due to an alleged lack of medical evidence. The ALJ – as even defendant acknowledges – was simply incorrect that no treaters had placed functional restrictions on plaintiff. In addition, the ALJ misstated the clinical evidence regarding possible nerve root compression. As such, the ALJ's purported reasons for rejecting plaintiff's subjective testimony were erroneous, failed to meaningfully address portions of the medical record, and are not legally sufficient reasons to deny plaintiff's application. *See, e.g., Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015); *Lambert*, 980 F.3d at 1270 (failure to "provide enough reasoning" in the credibility assessment to "meaningfully determine whether the ALJ's conclusions were supported by substantial evidence" was harmful error) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014)); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (holding that "after a claimant produces objective medical evidence of an underlying impairment, the ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity [because] pain testimony may establish greater limitations than can medical evidence alone.") These errors were not harmless, as both the functional restrictions and the clinical evidence of possible nerve root compressions supported rather than undermined plaintiff's complaints of debilitating body pain, which, if properly considered, could have resulted in a different RFC.

The ALJ also made boilerplate assertions discounting plaintiff's testimony based on a summary of the evidence, *e.g.*, "[t]he claimant's statements about the alleged intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence because those allegations are greater than expected in light of the objective evidence of record."

AR 26; *see also* AR 28 ("[t]he claimant's alleged symptoms are just not reasonably consistent with the medical evidence and other evidence in the record.")  The Ninth Circuit in *Lambert* held that an "ALJ's detailed overview of [a claimant's] medical history coupled with a nonspecific boilerplate conclusion that her testimony was 'not entirely consistent' with her medical treatment . . . was not enough to satisfy the minimal requirements for assessing credibility." 980 F.3d at 1277-78.

Finally, the ALJ erred in relying on plaintiff's "somewhat normal level" of daily activity in rejecting his subjective testimony and denying benefits.  AR 27.  As discussed *supra*, the ALJ's description of plaintiff's daily activities is at odds with plaintiff's testimony.  Furthermore, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations[.]"  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted); *see also* 20 C.F.R. § 404.1572(c).  Routine activities of daily living may discredit a claimant's testimony only where "the activities meet the threshold for transferable work skills" or "contradict [the claimant's] testimony."  *Schultz v. Colvin*, 32 F. Supp. 3d 1047, 1059 (N.D. Cal. 2014) (internal citations and quotations omitted).  Here, the ALJ did not note anything other than basic daily tasks and did not demonstrate how those tasks would translate to work skills or contradict plaintiff's testimony.

For the foregoing reasons, plaintiff is entitled to summary judgment on this claim.[2]

### V.    CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "The proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (internal quotations and citations omitted).

/////

/////

---

[2] The court does not reach the remaining claim.

Here, the court finds that further consideration of the record is needed for determination of whether plaintiff is disabled under the Social Security Act. Accordingly, remand for further proceedings is appropriate.

## VI. ORDER

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is granted;
2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is denied;
3. Judgment is entered for plaintiff; and
4. This matter is remanded for further administrative proceedings consistent with this order.

Dated: March 28, 2023.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE